

U.S. District Court
Wisconsin Eastern

JUL 09 2026

FILED
Clerk of Court

SHAQUETA T. STREETER,
    Plaintiff,
    v.
DONALD VANDERVEST, BRIAN VANSCYOC, and
TRACY L. HINTZ, in their individual capacities,
and RACINE COUNTY,
    Defendants.

Case No. _____

JURY TRIAL DEMANDED

## COMPLAINT

### INTRODUCTION

1. Plaintiff Shaqueta T. Streeter brings this action for the unlawful seizure, retention, and continued public filing of her private Facebook records during a criminal investigation and prosecution in which she was **never a suspect and was never charged**. Her records were swept up solely because she was a Facebook "friend" of the defendant in that case — her brother, James A. Barker III — and of a co-actor, Joshua Golden. Eleven years later, the records remain in the State's custody under a state-court order, entered without a hearing on June 4, 2026, directing that they be **retained** indefinitely. This action seeks damages for the original unlawful seizure and an order requiring the return, destruction, and expungement of her records.

### PARTIES

2. Plaintiff Shaqueta T. Streeter is an adult resident of Humble, Texas. Her name is misspelled in the underlying records as "Shaquita" and "Shaquiesha" Streeter.

3. Defendant **Donald Vandervest** was at all relevant times the **lead investigator** on the underlying case with the Racine County Sheriff's Office (RCSO), acting under color of state law, and is sued in his individual capacity.

4. Defendant **Brian Vanscyoc** was at all relevant times an RCSO investigator who assisted throughout the underlying investigation, acting under color of state law, and is sued in his individual capacity.

5. Defendant **Tracy L. Hintz** (RCSO badge #7018) was at all relevant times an RCSO deputy/investigator who authored the warrant and downloaded the seized records, acting under color of state law, and is sued in her individual capacity.

6. Defendant **Racine County** is a Wisconsin municipal entity responsible for the RCSO and for the custody of the seized records, named **in its official capacity for injunctive and equitable relief only** — the return, destruction, and expungement of Plaintiff's records, including the flash drive inventoried as Property Item #68. Plaintiff does **not** seek damages from Racine County.

## JURISDICTION AND VENUE

7. This Court has jurisdiction under 28 U.S.C. § 1331 over Plaintiff's claims under 42 U.S.C. § 1983 and the Stored Communications Act, 18 U.S.C. §§ 2701–2712, and supplemental jurisdiction under 28 U.S.C. § 1367 over the state-law claim.

8. Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in Racine County, within this District.

## FACTUAL ALLEGATIONS

### A. The seizure of a non-suspect's Facebook account

9. On or about May 26, 2015, RCSO downloaded the results of process "served on Facebook for Shaquita Streeter, James Barker and Joshua Golden," saved the results to a flash drive inventoried as **Property Item #68**, and the warrants were "**returned to the DA's Office.**" (RASO Supplementary Report of Inv. Tracy L. Hintz, Incident No. 15-021102, Bates RITTER 000112.)

10. An earlier RCSO report by Inv. Hintz (dated 04/24/2015, Bates RITTER 000049–000051) classified the persons of interest as "Arrested" (Barker) and "Suspect" (Golden), but classified Plaintiff only as "**Mentioned**." That report further states that "Preservation request[s] were sent online to Facebook for the Facebook accounts of Barker, Streeter and Golden," and that "On 04/28/15, search warrants for all 3 accounts were emailed to Facebook." Plaintiff was never a suspect and was never charged. The State itself listed Plaintiff by name — misspelled "Shaquita Streeter" — among the ordinary third-party names read to the jury at the outset of trial, never identifying her as a suspect or a party. (Trial Tr., Jury Trial Day 1, Nov. 13, 2018, at 12 (Doc 382).)

11. The **only** connection law enforcement ever identified between Plaintiff's account and the underlying case was that she was a Facebook "friend" of James A. Barker III and of Joshua Golden. At the November 15, 2018 jury trial, lead investigator **Vandervest,** asked under oath what connected Barker and Golden, testified only: "**You're Facebook friends.**" Pressed whether that was all, he could identify nothing further. (Trial Tr., Jury Trial Day 3, Nov. 15, 2018, at 47:5 (Doc 345).)

**B. The officers who seized the records never reviewed them and could not account for the process**

12. At the November 16, 2018 jury trial, Defendant **Vanscyoc** testified, as to the warrant for **Plaintiff's** Facebook account:

> Q. Did you get a search warrant for my sister, Shaquiesha Streeter, from Joshua Golden in my Facebook account because we was Facebook friends?
> A. **I'm not sure that I completed that search warrant.**
> Q. … Can you provide anything to the Courts that makes me and Josh Golden any other than just a Facebook friend?
> A. **I did not review any of those returns, but I don't believe there was.**

(Trial Tr., Jury Trial Day 4, Nov. 16, 2018, at 67:16–68:1 (Doc 315).) Vanscyoc further confirmed that the only connection between Barker and Golden was a Facebook friendship, and that he was aware of no other. (Id. at 62:17–22, 68:10–13.)

13. At the same jury trial, Defendant **Hintz** — the officer who **authored the Facebook warrant** — testified that it was "a warrant for [Joshua Golden's] Facebook accounts," **signed by Judge Faye Flancher**; that the returned records swept in the Facebook account of Plaintiff (referred to in the colloquy as Barker's "sister, Shaquita Streeter"); that she **"did not"** look through the records; that she did **not know who** looked through them; that she simply **"put them into evidence"**; and, repeatedly, **"I didn't review the records."** (Trial Tr., Jury Trial Day 3, Nov. 15, 2018, at 182:1, 183:4–9, 184:20–21, 185:21 (Doc 345).)

14. Defendant Vanscyoc gave the same account at an April 26, 2018 motion hearing, testifying that he "[did not] know if a Facebook warrant was written" and "[could not] remember," while confirming that the Facebook "friend" link was the probable-cause basis offered to the issuing judge. (Mot. Hr'g Tr., Apr. 26, 2018, at 40:17–42:2 (Doc 238).)

15. Consistent with her trial testimony, Defendant **Hintz** downloaded the Facebook returns, saved them to the Item #68 flash drive, and "advised" Defendants Vandervest and Vanscyoc "where to locate the information for their review" — review that, by both officers' own sworn testimony, never occurred. (Bates RITTER 000112.)

16. Defendants' authorship and control of the warrant documents is reflected in the State's own electronic discovery. The warrant files produced in the underlying case were **editable Microsoft Word documents whose metadata identifies the author as "TRA7018" — Defendant Hintz (RCSO badge #7018)** — with revisions saved by Defendant Vanscyoc (#7720) and Defendant Vandervest, in multiple versions. (State's electronic discovery; Def. Barker's § 974.06 Supplement, Doc 472 ¶ 9.) Together with Hintz's trial testimony that she wrote the warrant and the Hintz report (Bates RITTER 000112), these records establish that each Defendant personally

participated in authoring, obtaining, downloading, or directing the review of the process used to seize Plaintiff's account.

**C. The records are private, voluminous, and have no probative value — and the State knew it**

17. Plaintiff's Facebook records consist of her private communications, photographs, and personal identifiers. They comprise her **entire Facebook account** — a **4,785-page** Facebook Business Record for account ID **100001919676276**, "Shaqueta T Streeter" (vanity name **"ShaQuetathetruth"**), generated by Facebook on **May 11, 2015** and spanning **March 1 through April 25, 2015**.

18. The records have no probative value to the underlying case. The State's own review established that Barker and Golden "hadn't had any corresponding messages with each other on Facebook" at all (Buckett Motion to Suppress, Bates EMAIL 000131–000133; R.191) — so Plaintiff's records, swept in solely because she was a "friend" of those accounts, could not have shown anything probative. Defendant Hintz's own review logged only innocuous, non-criminal items under Plaintiff's name. (Bates RITTER 000050.)

19. Plaintiff's private records were further **disseminated beyond the investigation**: they were copied onto a disc the State produced to defense counsel on June 22, 2015 (described in the State's production as containing "photos eBay facebook paypal & landmark," including the "Facebook Warrant Results"), and a non-party, Crystal Bernal, printed materials from that disc — distributing Plaintiff's private records to persons with no lawful need for them, without her consent.

**D. The process was routed to the wrong custodian, and the State refuses to produce or return it**

20. Under Wis. Stat. § 968.17, a search warrant and its return must be filed with the **clerk of the circuit court** — the neutral legal custodian. Here, by the seizing officer's own report, the warrants were instead "returned to the DA's Office" (Bates RITTER 000112) — delivered to the prosecutor,

a party, rather than to the clerk. Defendant Hintz's account of that return is itself internally inconsistent: her report states the warrants were "returned to the DA's Office," yet at trial she testified that the report's statement that she "downloaded the results" was "incorrect," that May 26 was merely "the day that [she] received those," and that her report was "the one that says I returned those search warrants to the **Courts**" — leaving even the basic question of who holds the warrant and its return unresolved. (Trial Tr., Jury Trial Day 3, Nov. 15, 2018, at 185 (Doc 345).)

21. Whether Plaintiff's stored communications were in fact seized by a **warrant** or by a **subpoena** is unresolved on the existing record and is material to Count I. The defense-counsel warrant audit of record itemizes a "**Subpoena** for Facebook records. Streeter, Return May 26, 2015" (R.213), while other records and testimony refer to a "search warrant." When Plaintiff sought the warrant/subpoena face and supporting papers through a Wisconsin public-records request in May 2026, the prosecutor of record **refused to produce them**, asserting that "the files of the District Attorney's Office are not public records." (Letter of ADA Thomas Binger, May 28, 2026.) The same prosecutor has also **refused to agree to the return or destruction** of Plaintiff's records. The State thus holds the determinative document in an office that both lacks lawful custody of it and asserts immunity from disclosure.

**E. The records remain seized under a state-court retention order**

22. On May 26, 2026, Plaintiff filed in the underlying case, in her own name as a non-party movant by limited appearance, a motion to seal, restrict, return, and destroy her Facebook records, including Item #68. (Doc 473.)

23. On June 4, 2026, the circuit court (Ptacek, Reserve J.) denied the motion **without a hearing**, attributing it to the defendant rather than to Plaintiff, declaring the records "seized pursuant to a valid search warrant" without receiving any evidence, and ordering that the Item #68 flash drive "**will be retained**, and once this case concludes will be disposed of pursuant to department

Case 2:26-cv-01202-BHL    Filed 07/09/26    Page 6 of 11    Document 1

policies" — expressly conditioning any return on an "agreement of the parties" that the State has refused to give. (Doc 479.) The State has thus formally refused to return or destroy Plaintiff's records and asserts a present, continuing right to retain them.

## DISCOVERY OF THE CLAIM AND TIMELINESS

24. Plaintiff received no notice that her records had been sought, obtained, or filed.

25. Plaintiff was excluded from the courtroom during the November 2018 jury trial because she was a family member of the defendant, and therefore had no opportunity to learn at trial that her records had been seized.

26. Plaintiff first learned that her private Facebook records had been seized on **December 9, 2025,** when James A. Barker III informed her by text message at 11:34 a.m. Plaintiff possesses contemporaneous documentation of that notice.

27. This action is timely. The Stored Communications Act claim is filed within **two years of December 9, 2025,** the date Plaintiff discovered the violation, as required by 18 U.S.C. § 2707(f). Plaintiff's § 1983 claim borrows Wisconsin's three-year personal-injury limitations period (Wis. Stat. § 893.54), and her state-law invasion-of-privacy claim is governed by the three-year period for intentional torts (Wis. Stat. § 893.57); under the **discovery rule**, neither began to run until Plaintiff knew or reasonably should have known of the seizure — December 9, 2025 — because she received no notice that her records had been sought, obtained, or filed and was excluded from the trial at which they surfaced. The period is further tolled by Defendants' **concealment** of the seizure and by equitable estoppel. Plaintiff's records, moreover, **remain seized and on public file** — confirmed by the June 4, 2026 retention order (Doc 479) and the State's 2026 refusal to return them — an ongoing harm that supports Plaintiff's claim for injunctive relief and her state-law privacy claim.

**INDEPENDENCE OF THIS ACTION FROM THE STATE-COURT RULING**

28. This action does not seek review or reversal of any state-court judgment. Plaintiff's injuries — the 2015 seizure of her account and its continuing retention — exist independently of the June 4, 2026 order (Doc 479), and Plaintiff seeks damages and prospective relief against ongoing violations of federal law, not appellate review of a state ruling. Doc 479 has no preclusive effect on these claims: it was entered **without a hearing** and without any evidence; it attributed the motion to the criminal defendant rather than to Plaintiff (a non-party who filed in her own name); and its statement that the records were "seized pursuant to a valid search warrant" was made without receiving the warrant, was unnecessary to the disposition, was never litigated by Plaintiff in a full and fair proceeding, and is contradicted by the sworn trial testimony of the officers who seized the records (¶¶ 12–13).

**CLAIMS FOR RELIEF**

**COUNT I — STORED COMMUNICATIONS ACT (18 U.S.C. § 2707) (pleaded in the alternative)**

29. Plaintiff incorporates the foregoing paragraphs.

30. The Stored Communications Act requires the government to obtain a **warrant** issued on probable cause under 18 U.S.C. § 2703 to compel a provider such as Facebook to disclose the **content** of a subscriber's stored communications; a subpoena or court order reaches only non-content records.

31. Because Plaintiff's communications were created in March and April 2015 and seized on or about May 26, 2015, they had been in electronic storage for **180 days or less**, and 18 U.S.C. § 2703(a) therefore required a **warrant** — not a subpoena — to compel their content. To the extent the content of Plaintiff's stored electronic communications (messages, posts, photographs) was compelled from Facebook **by subpoena or other process rather than a warrant** issued on

probable cause under § 2703, Defendants knowingly or intentionally violated the Stored Communications Act. Plaintiff is entitled to actual damages, statutory damages of not less than $1,000, punitive damages where appropriate, and attorney's fees and costs under 18 U.S.C. § 2707(b)–(c). This count is timely under § 2707(f).

## COUNT II — 42 U.S.C. § 1983 (FOURTH AMENDMENT — UNREASONABLE SEARCH AND SEIZURE)

32. Plaintiff incorporates the foregoing paragraphs.

33. Plaintiff had a reasonable expectation of privacy in the content of her own Facebook account. Acting under color of state law, Defendants caused the seizure of Plaintiff's private communications **without probable cause as to her** and without any lawful basis, in violation of the Fourth Amendment.

34. The 2015 seizure of Plaintiff's account content without probable cause as to her was unreasonable and is actionable under § 1983. Plaintiff is entitled to compensatory and punitive damages and attorney's fees under 42 U.S.C. § 1988. Because her records were unlawfully obtained and remain in Defendants' custody and on public file, Plaintiff is also entitled to the equitable relief set out below — return, destruction, and expungement — as a remedy for the established violations.

## COUNT III — INVASION OF PRIVACY (WIS. STAT. § 995.50)

35. Plaintiff incorporates the foregoing paragraphs. As to this state-law count, Plaintiff has satisfied Wis. Stat. § 893.80: Racine County had **actual notice** of the circumstances of this claim through Plaintiff's May 26, 2026 motion (Doc 473) and her 2026 records demands concerning these same records, and Plaintiff has served the County with a written notice of claim and itemized statement; the County is not prejudiced. (This count is not pursued until the County has disallowed

the claim or it is deemed disallowed under § 893.80(1d)(b). The federal claims in Counts I and II are not subject to § 893.80.)

36. Defendants' seizure, retention, and public filing of Plaintiff's private communications, photographs, and identifiers — and their dissemination to persons with no lawful need for them — constitute an unreasonable intrusion upon her privacy and a public disclosure of private facts in violation of Wis. Stat. § 995.50. Plaintiff is entitled to compensatory damages and attorney's fees and costs under § 995.50(1).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Award, **against the individual defendants**, compensatory damages in an amount to be determined at trial; statutory damages under the Stored Communications Act of not less than $1,000 (18 U.S.C. § 2707(c)); and punitive damages in an amount to be determined at trial;

B. Enter injunctive relief ordering Defendants to **return to Plaintiff and destroy** all copies of her Facebook records, including the flash drive inventoried as Property Item #68, and to **expunge or seal** those records from any public file;

C. Award attorney's fees and costs under 18 U.S.C. § 2707, 42 U.S.C. § 1988, and Wis. Stat. § 995.50; and

D. Grant such other and further relief as the Court deems just.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 8, _____, 2026.

Respectfully submitted,

Shaqueta T. Streeter, Plaintiff, Pro Se

3918 Atascocita Rd #434

Humble, Texas 77396

(231) 837-9692

shaquetastreeter173@gmail.com